UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Monte J. L.,

    Plaintiff,

v.

Kilolo Kijakazi,
*Acting Commissioner of Social Security*,[1]

    Defendant.

Case No. 20-cv-1756 (MJD/TNL)

**REPORT & RECOMMENDATION**

---

James H. Greenman, Greenman Toomey, 250 Marquette Avenue, Suite 1380, Minneapolis, MN 55401 (for Plaintiff); and

Michael Moss, Special Assistant United States Attorney, Social Security Administration, 1301 Young Street, Suite 350, Mailroom 104, Dallas, TX 75202 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Monte J. L. brings the present case, contesting Defendant Commissioner of Social Security's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment, Plaintiff's Motion for Summary Judgment, ECF No. 16, and the Commissioner's Motion for Summary Judgment, ECF No. 18. These motions have been referred to the undersigned for a report and recommendation to the district court, the

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

1

Honorable Michael J. Davis, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion be **DENIED** and the Commissioner's motion be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI[2] asserting that he has been disabled since January 2019[3] due to arthritis, plantar fasciitis, hallux rigidus, neuropathy, anxiety, panic attacks, depression, and posttraumatic stress disorder. Tr. 100-01, 118; *see* Tr. 18. Plaintiff's application was denied initially and again upon reconsideration. Tr. 11, 112, 116, 129, 147.

Plaintiff appealed the reconsideration of his SSI determination by requesting a hearing before an ALJ. Tr. 11, 166-67. The ALJ held a hearing in October 2019, and issued an unfavorable decision. Tr. 11-30, 44-85. After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-6.

Plaintiff then filed the instant action, challenging the ALJ's decision. Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 16, 18. This matter is now fully briefed and ready for a determination on the papers.

---

[2] Initially, Plaintiff also applied for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. *See, e.g.*, Tr. 11, 86-99, 114, 131-45. Plaintiff subsequently withdrew his claim for DIB at the hearing before the administrative law judge ("ALJ"). Tr. 11; *see* Tr. 45-47.
[3] Plaintiff initially alleged disability as of September 2015. *See, e.g.*, Tr. 100, 116-17, 147. Plaintiff amended his onset date at the hearing before the ALJ. Tr. 11; *see* Tr. 45-47.

### III. PROCEEDINGS BEFORE THE ALJ

The issues in this case are confined to proceedings before the ALJ.

**A. Hearing before the ALJ**

At the hearing, the ALJ asked the vocational expert a hypothetical question about a person able to perform a limited range of light work[4] consistent with the residual-functional-capacity determination in this case except that the person was able to "stand and walk up to six hours[ and] sit for up to six hours." Tr. 74; *see* Tr. 18. The vocational expert testified that the representative jobs of route aid/router (approximately 40,00 jobs in the national economy), office helper (approximately 70,000 jobs in the national economy), and folder (approximately 30,000 jobs in the national economy) would be available to such a person. Tr. 75. The vocational expert described each of these jobs as "tabletop work." Tr. 75.

In making disability determinations, the Social Security Administration relies "primarily on the [*Dictionary of Occupational Titles* ("DOT")] (including its companion publication, the [*Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO")]) for information about the requirements of work in the national economy." *Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in*

---

[4] Jobs are classified in one of five categories based on their physical exertion requirements: sedentary, light, medium, heavy, and very heavy. *See generally* 20 C.F.R. § 416.967. The second-to-lowest classification is light work. *See generally id.* "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 416.967(b). In particular, "[e]ven though the weight lifted may be very little, a job is in this category *when it requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* (emphasis added). "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.*

3

*Disability Decisions*, SSR 00-4p, 2000 WL 1898704, at *2 (Soc. Sec. Admin. Dec. 4, 2000) [hereinafter SSR 00-4p]; *see* 20 C.F.R. § 416.966(d). When asked by the ALJ if his testimony was consistent with the DOT and SCO, the vocational expert answered affirmatively. Tr. 75.

The ALJ then asked the vocational expert to assume a hypothetical person with the same limitations except that this person was limited "to standing and walking only up to four hours." Tr. 76. The vocational expert testified that the same three jobs previously identified "have that capacity to be performed in the manner in which you've just allowed, with six hours of sitting and four hours of standing." Tr. 76. The vocational expert described this as "a sit/stand option." Tr. 76.

The ALJ confirmed that this testimony was not based on the DOT and SCO. Tr. 76. The vocational expert agreed, and testified that it was based on his experience with these occupations. Tr. 76. The vocational expert testified that he had "placed individuals in these occupations" and "provided on-site analyses of these occupations, attesting to how they may be performed within the context of the hypothetical." Tr. 76. The vocational expert further testified that he would not modify the number of jobs available based on the reduction of standing and walking to four hours. Tr. 76.

The ALJ then asked a third hypothetical in which standing and walking were reduced to two hours. *See* Tr. 76-77. The vocational expert testified that the folder job would still be available as would the representative jobs of paper sorter and sub-assembler. Tr. 77-78. This testimony was likewise based on the vocational expert's experience. Tr. 79.

In relevant part, on cross-examination, Plaintiff's counsel[5] asked the vocational expert what type of business he had viewed the folder job at. Tr. 79. The vocational expert responded:

> Let me give you an example of what most of the folders tend to do. Shop towels, or small towelettes. It's within the laundry or dry cleaning industry. So, a good example would be G and K, which has various stations just dealing with shop towels. You know, service stations. Cintas would be another example of people that do shop towels, in addition to all the rest of the laundry stuff.

Tr. 79. The vocational expert agreed that Cintas also handles uniforms. Tr. 80.

The vocational expert described the folder job as doing a variety of tasks associated with laundry, including folding, hand-pressing, shaking, smoothing, stacking, inspecting, separating, and wrapping laundry. Tr. 80. The vocational expert again testified that the folder job could be performed sitting or standing because "[i]t's desktop, so you can stand or you can sit, depending on how you wanna proceed." Tr. 80.

During his closing, Plaintiff's then-counsel expressed frustration with the vocational expert's testimony and the sedentary-light[6] hybrid nature of the folder job:

> I mean, I think [Plaintiff's] limited to sedentary. I think doing a 20—I just think it's really difficult, because tabletop work, I mean, it's hard to say that some jobs may require only ten

---

[5] A different attorney with the same law firm representing Plaintiff before this Court. *See* Tr. 11, 44, 342.
[6] Jobs with the lowest physical exertion requirements are classified as sedentary. *See generally* 20 C.F.R. § 416.967.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id.* § 416.967(a).

5

> pounds at tabletop work, some jobs may require up to 20. When you get into the sedentary[-]light hybrid, you know—I don't know laundry workers that sit all day and don't have to lift—you know, it just seems like they wouldn't have to lift more than ten, or they would have to stand for more than two hours. I mean, I'm, I'm just—it's frustrating because we get this testimony and it's inconsistent with I, what I think sedentary or light work is. It seems to be kind of picking and choosing and it's not consistent with the DOT and I— obviously the expert says it's his experience, but I get different answers from different experts, so it's frustrating.

Tr. 83.

The ALJ responded that she understood counsel's frustration, but the vocational expert "did expressly state that his experience is based on on-site job analyses . . . and work that he's worked with and you and I, we aren't the experts. That's why we have him here." Tr. 83. Plaintiff's then-counsel offered to call Cintas and see if its folders were required to stand. Tr. 83. The ALJ responded, "And there might be, and I think that we have to rely at some point on the expert, and you know that. And, not everything is going to fit perfectly in sedentary or light. That's why we have the vocational experts . . . and not just the grid rules." Tr. 83-84.

### B. Post-Hearing Brief

After the hearing, Plaintiff's then-counsel submitted a post-hearing brief, indicating that he had "researched this matter online" and "attaching multiple job listings from Cintas.com for available job positions of 'folder.'" Tr. 342; *see* Tr. 343-48. Each of the "*positions explicitly state[d] that the ability to stand for 7 hours of an 8 hour shift is required.*" Tr. 342; *see* Tr. 343, 347. Plaintiff's then-counsel asserted that this information was "a direct conflict with the [vocational expert's] testimony during the

6

hearing," rendering the testimony unreliable. Tr. 342. Plaintiff's then-counsel closed with: "If Your Honor is unable to issue a fully favorable decision in this matter please consider this to be a request for a supplemental hearing to obtain testimony from a different [vocational expert]." Tr. 342.

### C. ALJ's Decision

The ALJ denied the request for a supplemental hearing. Tr. 11. The ALJ reasoned that she need not reach Plaintiff's argument as to the vocational expert's testimony "that a hypothetical person could perform a range of light work even if limited to standing/walking no more than two hours in an eight-hour day" was unreliable because the ALJ did not find Plaintiff's residual functional capacity "to be limited to standing/walking no more than two hours in an eight-hour day." Tr. 12. The ALJ additionally acknowledged that Plaintiff's then-counsel had presented information that the folder job "requires the ability to stand for seven out of eight hours according to the position description by one employer." Tr. 12. The ALJ noted, however, that "the vocational expert cited additional representative occupations, other than the job of folder, that reflect jobs existing in significant numbers." Tr. 12.

In relevant part, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work consistent with the second hypothetical, namely, that "standing and walking are limited to only up to four hours." Tr. 18. Based on the vocational expert's testimony, the ALJ found that the route aid/router, office helper, and folder jobs were available. Tr. 29. The ALJ acknowledged that these "jobs are light jobs according to the [DOT] and therefore involve standing or walking up to six hours per the

7

DOT." Tr. 29. The ALJ went on to state that "[t]he vocational expert explained that his testimony that these jobs can be performed with only up to four hours of standing and walking was based on his experience with these occupations, including placing individuals in them and providing on[-]site analyses of them." Tr. 29. The ALJ "f[ound] the vocational expert's explanation reasonable and accept[ed] his testimony." Tr. 29. "Pursuant to SSR 00-4p, the [ALJ] . . . determined that the vocational expert's testimony [wa]s otherwise consistent with the information contained in the DOT." Tr. 29.

The ALJ additionally noted:

> As discussed earlier, [Plaintiff's then-counsel] asserted in his post-hearing brief that the folder job cited by the vocational expert requires the ability to stand for seven out of eight hours according [to] the position description from one employer. However, even if the undersigned does not consider the folder job, the vocational expert cited additional representative occupations reflecting jobs existing in significant numbers.

Tr. 29 (citation omitted). The ALJ therefore concluded that Plaintiff was not under a disability.

## IV. ANALYSIS

### A. Legal Standard

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir.

2011) ("Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision.").

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher*, 652 F.3d at 863. The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 1381a; *accord* 20 C.F.R. § 416.901. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age,

education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); *accord* 20 C.F.R. § 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) []he was severely impaired; (3) h[is] impairment was, or was comparable to, a listed impairment; (4) []he could perform past relevant work; and if not, (5) whether []he could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 416.912(a). The burden of production, however, "shifts to the Commissioner at step five to show the claimant is capable of performing other work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)); *see Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate [residual functional capacity] remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").

### B. Folder Job

Plaintiff asserts that it was improper for the ALJ to rely on the vocational expert's testimony, which differed from the DOT and SCO and was based on his experience, regarding the availability of the representative job of folder in light of the post-hearing brief and accompanying evidence that folder jobs with Cintas require the ability to stand for at least seven hours in an eight-hour day compared to the four hours testified to by the

vocational expert. Plaintiff asserts that the ALJ did not explain how the vocational expert's explanation about the difference was reasonable in light of the post-hearing information and just avoided addressing the conflict. Plaintiff asserts that the "evidence discovered after the hearing cast doubt on the totality of the [vocational expert's] testimony." Pl.'s Mem. in Supp. at 14, ECF No. 17.

The Commissioner responds that

> [a]t most, Plaintiff provided evidence arguably calling into question his ability to perform the folder job for just one employer—Cintas. [Plaintiff] did not provide any evidence regarding folder jobs at G and K or any other employer of these 30,000 jobs. And he did not provide any evidence regarding the route aid or office helper jobs.

Def.'s Mem. in Supp. at 10, ECF No. 19. The Commissioner further responds that "the ALJ correctly pointed out in addressing this issue in detail in her decision[ that] any error regarding the folder job was harmless since the unchallenged route aid and office helper jobs existed in significant numbers even if the folder jobs were excluded from consideration." Def.'s Mem. in Supp. at 10. Accordingly, the Commissioner maintains that Plaintiff cannot bear his burden to shown any alleged error was harmful "because the approximately 110,000 unchallenged route aid and office helper jobs the vocational expert identified and [the] ALJ relied on far exceed the number of jobs the Eighth Circuit has found significant." Def.'s Mem. in Supp. at 10.

When determining whether a claimant is disabled, the ALJ may use a vocational expert to assist with whether a claimant's work skills can be used in other work and the

specific occupations in which they can be used. 20 C.F.R. § 416.966(e). Occupational evidence provided by a vocational expert

> generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704, at *2. "[T]he ALJ has an affirmative responsibility to ask about any possible conflict between [vocational expert] evidence and the DOT, and its companion publication (the SCO), on the requirements of a job or occupation before relying on [vocational expert] evidence to support a determination of not disabled." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (quotation and footnote omitted).

> If there is an "apparent unresolved conflict" between [vocational expert] testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [vocational expert] testimony rather than on the DOT information." The ALJ is not absolved of this duty merely because the [vocational expert] responds "yes" when asked if her testimony is consistent with the DOT.

*Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00-4p, 2000 WL 1898704, at *2-4). Absent adequate rebuttal, vocational expert "testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform.'" *Id.* at 990 (quoting *Kemp*, 743 F.3d at 632).

12

Notably, the ALJ in this case expressly recognized the potential conflict with the DOT and SCO with respect to the vocational expert's testimony regarding the availability of light work jobs when a person was limited to less than six hours of standing per day. Tr. 76 ("Okay. And that's not within the DOT and SCO, correct?"); *see* Tr. 29 ("The above jobs are light jobs according to the [DOT] and therefore involve standing or walking up to six hours per the DOT."). In response, the vocational expert explained that his testimony was based on his experience placing individuals in the route aid/router, office-helper, and folder jobs and "on-site analyses of these occupations." Tr. 46. The ALJ found this explanation to be reasonable. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (vocational expert offered "experience observing people at work" and survey in professional journal to support testimony inconsistent with DOT). While Plaintiff asserts that the vocational expert's testimony regarding the folder job was unreliable based upon the post-hearing information, the reasonableness of the vocational expert's explanation is a "fact issue[] for the ALJ to resolve." *Id.* In any event, the ALJ also noted that the post-hearing information was a "description from one employer." Tr. 29.

Further, even assuming for sake of argument that the folder job was not available, the Eighth Circuit has held that "one mistaken recommendation does not devalue the rest of [the vocational expert's] opinion." *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014). "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." *Id.*; *see Weiler v. Apfel*, 179 F.3d 1107, 1110 (8th Cir. 1999) ("We need not exhaustively compare Weiler's

13

residual functional capacity to every job recommended by the vocational expert."); *see also O'Connell v. Saul*, No. 18-cv-2072-KEM, 2019 WL 4784613, at *12 (N.D. Ia. Sept. 30, 2019) ("District courts in the Eighth Circuit . . . have held that an inconsistency between the [vocational expert's] testimony and the DOT is harmless if at least one job remains the claimant can perform that is consistent with the DOT, and the [vocational expert's] testimony establishes that this job exists in significant numbers in the national economy." (citing cases)).

Plaintiff does not dispute that the two other jobs—route aid/router and office helper—identified by the vocational expert are consistent with his residual functional capacity and available in significant numbers. As the ALJ herself pointed out, even if the folder job was excluded from consideration, "the vocational expert cited additional representative occupations reflecting jobs existing in significant numbers." Tr. 29. While Plaintiff suggests that the post-hearing information called into question the reliability of vocational expert's *entire* testimony, Plaintiff has not explained what in particular about the post-hearing information called into question the vocational expert's testimony regarding the route aid/router and office-helper jobs. The Court concludes the ALJ did not error in relying on the vocational expert's testimony at step five to conclude that Plaintiff was not disabled. *Grable*, 770 F.3d at 1202; *see, e.g.*, *Sanders v. Comm'r of Soc. Sec. Admin.*, No. 3:20CV00268-BRW-JTR, 2021 WL 5458253, at *3 (E.D. Ark. Nov. 1, 2021), *report and recommendation adopted*, 2021 WL 5458224 (E.D. Ark. Nov. 22, 2021); *Dexter v. Saul*, Civil No. 20-5025, 2020 WL 7410149, at *10 (W.D. Ark. Dec.

2, 2020), *report and recommendation adopted*, 2020 WL 7409606 (W.D. Ark. Dec. 17, 2020); *O'Connell*, 2019 WL 4784613, at *12.

### C. Development of the Record

Lastly, Plaintiff argues that he did not receive a full and fair hearing based on the ALJ's denial of his request for a supplemental hearing.

"[S]ocial [S]ecurity hearings are non-adversarial." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Id.*; *see, e.g.*, *Combs v. Berryhill*, 787 F.3d 642, 646 (8th Cir. 2017); *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012).

An ALJ does not, however, "fail in his [or her] duty to develop the record if substantial evidence exists to allow the ALJ to make an informed decision." *Hey v. Colvin*, 136 F. Supp. 3d 1021, 1046 (D. Minn. 2015) "A [claimant] seeking to reverse an ALJ's decision due to the failure to adequately develop the record bears a heavy burden: a [claimant] must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Id.*; *see Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *see also Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 517 n.3 (8th Cir. 2019); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an

assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008); *accord Smith v. Astrue*, 232 F. App'x 617, 619 (8th Cir. 2007).

Plaintiff has not met his burden to show that the ALJ failed to develop properly the record and provide him a full and fair hearing. The mere fact that Plaintiff's request for a supplemental hearing was denied does not establish that he was prejudiced or treated unfairly by the ALJ. There was substantial evidence in the record to support the ALJ's conclusion that Plaintiff was able to perform, at minimum, the route aid/router and officer-helper jobs based on the vocational expert's testimony and that such jobs existed in significant numbers. As stated above, Plaintiff has not argued otherwise. While the Court can appreciate Plaintiff's desire to engage in further cross examination in light of the post-hearing information, Plaintiff has not established any prejudice based on the ALJ's denial of his request for a supplemental hearing.

[Continued on next page.]

## V. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 18, be **GRANTED**.

Dated: January    31   , 2022            *s/ Tony N. Leung*
                                         Tony N. Leung
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Monte J. L. v. Kijakazi*
                                         Case No. 20-cv-1756 (MJD/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).